**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ELLIOT GARTH SCRUBB #A41 793 746 Petitioner | : | |
| v. | : | Civil Action No. DKC-05-2093 |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT Respondent | : : : | |

. . . .o0o. . . .

**MEMORANDUM**

Pending is a pro se 28 U.S.C. §2241 petition for writ of habeas corpus filed by Elliott Garth Scrubb, an alien subject to an administratively final order of deportation. Petitioner, a detainee at the Dorchester County Detention Center, challenges his continued detention under Immigration and Naturalization Act ("INA") § 241(a), 8 U.S.C. § 1231(a), based upon <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), and he seeks release from confinement until his removal can be effected. The petition does not seek judicial review of Petitioner's final deportation. Counsel for Respondent, U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security has moved to dismiss the petition and has filed exhibits in support.[1]  Upon review of the pleadings, the court determines that a hearing is unnecessary. <u>See</u> Local Rule 105.6. (D. Md. 2004).  For the reasons that follow, the petition shall be denied.

**I. Factual Background**

The following facts are undisputed.  Petitioner is a native and citizen of St. Vincent who was admitted to the United States as a lawful permanent resident on September 8, 1988.  On September 20, 1994, he was convicted in Orange County, New York of the criminal sale of cocaine.  On December 2,

---

[1]The Court granted Petitioner's motion for an extension of time to reply. Papers 7 & 8. Petitioner, however, did not file a reply.

1994, the former Immigration and Naturalization Service [2] issued an Order to Show Cause charging Petitioner as deportable from the United States as an alien convicted of a law related to a controlled substance under former section 241(a)(2)(B)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. 1251(a)(2)(B)(i)(1994) and as an alien convicted of an aggravate felony under former section 241(a)(2)(A)(iii) of the INA, 8 U.S.C. 1251(a)(2)(A)(iii).  Paper No. 5, Exhibit A.

On June 23, 1995, the Immigration Judge ordered Petitioner's deportation to St. Vincent. Petitioner appealed the decision to the Board of Immigration Appeals (BIA). The BIA dismissed the appeal on April 23, 1996.  Paper No. 5, Exhibit B.  Petitioner was initially taken into INS custody on December 4, 1995.  He was subsequently released on bond and notified to surrender to the INS for deportation on May 18, 2000.  Petitioner, however, failed to appear on May 18, 2000, and his bond was cancelled.

On January 10, 2005, Petitioner was taken into ICE custody by the Newark, New Jersey, ICE Field Office.  Petitioner was transferred to the custody of the ICE Baltimore Field Office on January 24, 2005.  Paper No. 5, Exhibit C, ¶ 4.  On January 11, 2005, one day after he was taken into custody, the ICE Newark Field Office sent a written request for Petitioner's travel document to the Consulate General of St. Vincent and the Grenadines.  See id.  Mr. Cozir, Consul of St. Vincent and the Grenadines, interviewed Petitioner by telephone on or about January 19, 2005, February 22, 2005, and March 18, 2005.  See id. at ¶¶ 5-7.  At the conclusion of the March 18, 2005 interview, Mr. Cozir told the ICE Deportation Officer that he would issue a travel document upon receipt of an itinerary.  See id. at ¶ 7.

---

[2] On March 1, 2003, the Immigration and Naturalization Service (INS) was abolished, and its functions were transferred to the Department of Homeland Security under the Homeland Security Act of 2002.  The Homeland Security Act established the Bureau of Border Security, renamed the Bureau of Immigration and Customs Enforcement.

Petitioner 's deportation was scheduled for March 31, 2005, and a copy of the itinerary was sent to the Consulate on March 24, 2005. See id. at ¶ 8. The travel document, however, was not issued. According to consulate records, Petitioner still had a pending immigration hearing. See id. The Deportation Officer assigned to Petitioner informed consular staff on March 30, 2005, that the records were incorrect. See id. Consulate staff indicated that Mr. Cozir was on vacation and that Petitioner would have to be scheduled for another telephone interview. See id.

On April 7, 2005, Petitioner was personally served with a Warning for Failure to Depart. This warning explained that an alien who refuses to make a timely, good faith application for a travel document or other document required for removal, or who takes any other action to prevent or hamper removal, may be criminally prosecuted. Petitioner was also personally served with an "Instruction Sheet to Detainee Regarding Requirement to Assist in Removal." The form explained that Petitioner had thirty days to apply for a travel document, provide ICE with any passport, birth certificate, identity card other evidence of citizenship, nationality, place of birth and place of residence before he came to the United States, and to take other actions to ensure the issuance of a travel document and his removal. Petitioner refused to sign these documents to indicate receipt. See id. at ¶ 9.

On May 6, 2005, the Deportation Officer spoke to Petitioner. Petitioner claimed that he did not know why the Consulate did not issue a travel document. The Deportation Officer told Petitioner to contact the Consulate and tell them he had no pending hearings, no available relief from deportation, and that he wanted the Consulate to issue a travel document so that he could be deported. See id. at ¶ 11. According to the Deportation Officer, Petitioner refused. See id.

On May 10, 2005, during a conference call with Mr. Cozir and Michael Alba, an immigration attorney who had formerly represented Mr. Scrubb, the Deportation Officer was informed by Mr. Cozir

3

that he would not issue a travel document until "all avenues for relief had been exhausted." Id. at ¶ 12. Mr. Alba stated that he had not represented Mr. Scrubb for a long time and that he would look into the case to see if Petitioner had any possible relief from deportation. See id. Mr. Cozir told the Deportation Officer to call him back to see if Mr. Alba had any information. See id. On May 12, 2005, the Deportation Officer called Mr. Cozir again. Mr. Cozir stated he had not heard from Mr. Alba, and he would not issue a travel document until he determined there was no possible relief from deportation. See id.

On July 12, 2005, the Deportation Officer was informed by Ms. King, a consulate representative, that a travel document would not issue because Petitioner had a "pending case." See id. at ¶ 13. The Deportation Officer advised the consulate representative that she was incorrect and that no immigration case was pending against Petitioner. See id. That same day, the Deportation Officer instructed Petitioner to notify the Consulate that there was no immigration case pending against him and to request travel documents. See id. According to the Deportation Officer, Petitioner did not indicate whether he would act as instructed. See id. On July 28, 2005, Petitioner was served with a second Warning for Failure to Depart and Instruction Sheet. See id. at ¶ 14.

On August 22, 2005, Petitioner spoke by telephone with a consulate representative. The conversation was very brief, lasting only one or two minutes. During the telephone call, Petitioner was not heard to request issuance of a travel document. See id. at ¶ 15. Further, Petitioner did not indicate his immigration hearings were completed or that he wanted to return to St. Vincent. See id.

On September 13, 2005, Petitioner spoke again with the Consulate. This time, he was heard to tell the Consulate that he wanted to return home. See id. at ¶ 18. On September 14, 2005, an ICE Headquarters Deportation Officer contacted Mr. Cozir who indicated that Petitioner is a citizen of St.

4

Vincent and a travel document would issue. See id. at ¶ 19. Mr. Cozir requested the opportunity to speak to Petitioner once more in order to explain why a travel document must be issued. See id. On September 15, 2005, Petitioner spoke again to Mr. Cozir by telephone. At the conclusion of the telephone conversation, Mr. Cozir stated to the Deportation Officer that, "if nothing happens in the next few days," he would issue the travel document. See id. at ¶ 20.

**II. Analysis**

In Zadvydas, the Supreme Court held that post-removal-order detention under 8 U.S.C. § 1231(a) is implicitly limited to a period reasonably necessary to effect the alien's removal from the United States and does not permit indefinite detention. See 533 U.S. at 700. The Supreme Court determined that after a order of deportation becomes final, an alien may be held for a six-month period. After this period:

> "[o]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."

Id. at 701.

Zadvydas places the burden on the alien to show that there is no significant likelihood of removal in the reasonably foreseeable future. See id. Petitioner has not met this burden. No evidence is presented here that Petitioner's removal is unlikely to occur in the "reasonably foreseeable future." See id. In fact, the record indicates travel papers are being processed by the Consulate. Paper No. 5, Exhibit C at ¶¶ 19 and 20. According to Respondent, ICE has been successful in repatriating aliens to St. Vincent and the

Grenadines. Paper No. 5 at 9, Exhibit C at ¶ 4. Additionally, the evidence presented suggests that the delay is attributable in part to Petitioner's own failure to cooperate.[3] See Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003).

Under these circumstances, issuance of the writ is unwarranted. Accordingly, the petition for writ of habeas shall be denied. A separate Order follows.

\_\_11/3/05_____                                             _____/s/_____
Date                                                                            DEBORAH K. CHASANOW
                                                                                United States District Judge

---

[3] As noted earlier, Petitioner became subject to an administratively final order of deportation on April 23, 1996, when the BIA dismissed his appeal. He was taken into ICE custody on January 10, 2005. Thus, the presumptively reasonable six-month period of Petitioner's post order detention expired on July 10, 2005.

6